UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [18]

## I. Introduction

Before the Court is a motion to dismiss brought by Defendant Fitness International, LLC ("Defendant"). Defendant's Motion to Dismiss, ECF No. 18 ("Mot."). For the following reasons, the motion is GRANTED.

## II. Factual and Procedural Background

Plaintiff the United States of America ("Plaintiff") brings this case as an enforcement action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–89, and its implementing regulation, 28 C.F.R. Part 36. Complaint, ECF No. 1 ("Compl."). Defendant owns and operates over 700 gym and fitness club facilities throughout the United States under the name "LA Fitness." *Id*. ¶¶ 1, 11.

A number of patrons of Defendant's facilities, including those identified as Patrons A-D in the complaint and other similarly situated individuals, have encountered various barriers and accessibility issues because of Defendant's failure to accommodate their disability. *Id*. ¶¶ 15-35.

: 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

    Patron A has frequented several LA Fitness facilities since January 2020 to swim for exercise and to manage her pain related to her Multiple Sclerosis. *Id*. ¶ 17. During some of these visits, Patron A encountered inoperable pool lifts making her unable to use the pool and, even when the pool lift appears to be working, has gotten stuck and been left dangling over the water, requiring assistance from employees to exit the pool. *Id*. ¶ 18. Patron A has also experienced barriers to her use of the accessible shower after she swims, namely a shower bench that was neither centered nor close enough to the grab bar and the on/off switch and temperature controls being out of reach from the shower bench. *Id*. ¶¶ 31-32.

    Patron B suffers from cerebral palsy and quadriplegia and his only available form of exercise is swimming. *Id*. ¶¶ 19-20. For several years, Patron B has frequented LA Fitness facilities to swim several days a week, accompanied by his father. *Id*. ¶ 20. When the pool lift works, Patron B can transfer out of the pool independently, but when the lift is not working, he must crawl out of the pool using the stairs, causing him physical discomfort and abrasions. *Id*. Between early 2021 and early 2022, the pool lift was inoperable at the location Patron B frequented. *Id*. After waiting almost a year for LA Fitness to fix the broken pool lift battery in 2022, Patron B's father spent about $500 on a battery and charging case for use at the pool lift. *Id*. ¶ 35. Then, in 2023, that LA Fitness location closed, and Patron B began to frequent another LA Fitness location. *Id*. ¶ 20. At the new location, the pool lift battery also did not work, and Patron B used the battery and charging case at that location until the pool lift broke altogether in late 2023 and has remained inoperable as recently as July 2024. *Id*. ¶¶ 20, 35. For years, Patron B's father has notified LA Fitness facility and corporate staff about the broken pool lifts, but these issues remain unresolved. *Id*. ¶ 20.

    Patron C had polio as a child and cannot stand or walk and is substantially limited in neurological function. *Id*. ¶ 22. Patron C has been an LA Fitness member since 2007 and visits LA Fitness locations to use weight machines and the jacuzzi. *Id*. ¶ 23. Patron C can access the jacuzzi without the jacuzzi lift but needs the lift to get out of the jacuzzi. *Id*. Often, Patron C cannot operate the lift independently because the remote control, battery, or other parts are not functioning. *Id*. When the remote control is broken, Patron C uses her cell phone to call the front desk for staff to manually move the lift chair over the water so she can exit the jacuzzi; however, often she cannot reach the front desk for assistance and feels fearful she will be stuck in the jacuzzi without any means of getting out. *Id*.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

Patron D has chronic osteoarthritis in both knees and is substantially limited in his ability to walk and climb stairs. *Id*. ¶ 26. He first joined LA Fitness in 2013 to exercise regularly to recover from surgery, and his doctor recommended walking in the pool as exercise. *Id*. ¶ 27. In 2022, once the LA Fitness near Patron D's home reopened after it had shut down because of the COVID-19 pandemic, Patron D rejoined to use the pool at that location to exercise. *Id*. About a month after rejoining, Patron D observed that the elevator from the street level to the facility entrance was broken. *Id*. Due to his chronic osteoarthritis, Patron D cannot climb the stairs to the entrance. *Id*. Additionally, the pools at other LA Fitness facilities are too deep to walk in, making him unable to exercise at an LA Fitness facility while the elevator was broken. *Id*. Patron D asked repeatedly about repair of the elevator in 2022 and 2023. *Id*. Although he was informed several times that the elevator would be fixed "next month," the elevator remained broken through late September 2024. *Id*.

The complaint also alleges numerous deviations from the 1991 and 2010 ADA Standards for Accessible Design at multiple of Defendant's facilities in Dallas-Ft. Worth, Texas. *Id*. ¶ 33. These deviations include: reach range violations; protrusions; various barriers to access in the showers, locker rooms, water closets, doors, saunas, operable parts, and drinking fountains; violations at the pool deck; sign violations; elements limiting the accessible interior route; and fitness equipment stations that lack sufficient maneuvering clearance. *Id*. ¶¶ 33(a-m).

Plaintiff alleges that these various ADA violations demonstrate that Defendant has engaged in a pattern or practice of discrimination under the ADA or that Defendant has discriminated against individuals with disabilities in a way that the Attorney General has determined raises an issue of general public importance. *Id*. ¶¶ 6. Plaintiff brings both the pattern or practice and general public importance claims against Defendant, seeking injunctive relief, monetary damages, and a civil penalty as to Defendant's entire nationwide operation. *Id*. ¶¶ 36-48.

Defendant moves to dismiss the claims, arguing that Plaintiff's allegations are insufficient to support a pattern or practice claim and fail to meet the pleading requirements of Rule 8 as to the general public importance claim. Mot. Plaintiff opposes the motion, arguing that the allegations support a reasonable inference of a pattern or practice of discrimination and, in the alternative, that the Attorney General's determination that the alleged discrimination raises an issue of "general public importance"

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

suffices at the pleading stage even if the allegations do not amount to a pattern or practice of discrimination. Opposition to Motion to Dismiss, ECF No. 22 ("Opp.").

### III. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### IV. Discussion

The Court finds that Plaintiff fails to set forth allegations that would allow the Court to infer a pattern or practice of discrimination and fails to set forth allegations that properly put Defendant on notice of the claims which the Attorney General has determined are of general public importance. Therefore, the Court grants the motion to dismiss.

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

**A. Plaintiff does not adequately allege a pattern or practice claim.**

To adequately allege a pattern or practice claim, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant engaged in "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977). The allegations must be sufficient to show that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Id.* A plaintiff can allege a pattern or practice of discrimination by the existence of an express discriminatory policy, or by sufficient instances of discrimination and anecdotal or statistical evidence from which a court can reasonably infer the existence of a discriminatory pattern or practice. *Teamsters,* 431 U.S. at 335 (numerous instances and statistical evidence); *United States v. Bd. of Educ.,* 911 F.2d 882, 892 (3d Cir.1990) (express policy).

Plaintiff correctly points out that, while perhaps *sufficient* to sustain a pattern or practice claim, allegations of "corporate-level directives" are not strictly *necessary* to sustain such a claim. Opp. at 2. Indeed, the complaint here contains no allegations of any express policy of discrimination, and the mere lack of any such allegations is not immediately fatal to that complaint. However, the lack of any alleged express policy means that in order to survive a motion to dismiss, Plaintiff's allegations must contain statistical and/or anecdotal facts that permit the Court to reasonably infer that Defendant discriminated against those with disabilities as part of its routine operations, not just that some of Defendant's locations had scattered ADA violations.

Here, the allegations are insufficient for the Court to draw the required inference, and Plaintiff's pattern or practice claim therefore fails. Plaintiff alleges specific instances of discrimination by four members of LA Fitness, identified only as Patrons A-D in the complaint, and a number of generalized allegations of various ADA violations in some number of LA Fitness locations in the Dallas-Ft. Worth area. Even taken together, these allegations fail to plausibly demonstrate a pattern or practice of discrimination.

The allegations regarding Patrons A-D involve only four members of LA Fitness who visited at

|  |  : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

least five[1] (but likely more) LA Fitness locations. The complaint alleges that Defendant has 700 locations nationwide and is "the largest chain of owner operated gym and fitness club facilities in the United States." Compl. ¶ 1. While the complaint does not specify the total number of Defendant's members,[2] certainly considering the alleged size of Defendant's nationwide operation, four members with one or two instances of discrimination each is an altogether insignificant number that, without more, does not evince a pattern or practice by a nationwide operation the size of Defendant. Nor is it possible to infer that these instances show a pattern or practice of discrimination in a specific city or state because none of the locations visited by Patrons A-D are specified in the complaint.

The generalized allegations regarding the Dallas-Ft. Worth area, even taken together with the more specific allegations regarding Patrons A-D, do not suffice to infer that these violations are more than isolated, accidental, or sporadic as to Defendant's nationwide operation. The Dallas-Ft. Worth allegations concern an unspecified number of alleged ADA violations (from a list of specified types of violations) at an unspecified number of LA Fitness locations that are in the Dallas-Ft. Worth area. These allegations certainly *could* be numerous and *could* be significant, especially considering they focus on a single metropolitan area. But any inference that they *are* numerous and/or significant would be purely speculation when the complaint fails to set out even an estimate of how many total violations there are across how many locations. The only facts the complaint provides are that within one metropolitan area, an unspecified number of Defendant's locations had an unspecified number of ADA violations of certain specified types. These allegations, even buttressed by the anecdotal instances of Patrons A-D, who themselves may or may not have visited locations in the Dallas-Ft. Worth area, fail to permit an inference that the alleged discrimination is systemic rather than random.

Plaintiff correctly points out that courts have found that plaintiffs sufficiently alleged a pattern or

---

[1] The complaint ultimately does not specify the exact number of locations visited by Patrons A-D, many of whom are alleged to visit "several" or "multiple" locations. However, Patron B is alleged to have visited at least two locations, and every other must have visited at least one, bringing the minimum number up to five. *See* Compl. ¶¶ 16-27. Without more specific information, it is impossible for the Court to infer any specific total number of locations at issue.

[2] In the motion to dismiss, Defendant cites a 2016 estimate of 4.9 million members, a number for which it requests this Court to take judicial notice. Mot. at 1. Given that this estimate is now nearly 10 years old, it is unclear whether it is relevant, especially considering that the Court can already infer from the allegations contained in the complaint that Defendant's membership must be quite large.

:

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

practice of discrimination even where a low number of instances of discrimination were alleged. The definition of pattern or practice certainly "is not capable of a precise mathematical formulation." *Ste. Marie v. E. R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981) (*citing United States v. Jacksonville Terminal Co.*, 451 F.2d 418, 441 (5 Cir. 1971), *cert. denied*, 406 U.S. 906 (1972)). However, the cases where courts did find a pattern or practice based only on few examples differ greatly from this case in the comparative scope of the examples as compared to the size of the defendant's operation.

The *Nobel* case is instructive on these issues. In *Nobel*, the court found that the Government adequately stated a pattern or practice claim under the ADA against a charter school network comprised of at least fifteen schools based on only twelve instances of discrimination. *United States v. Nobel Learning Communities, Inc.*, 676 F. Supp. 2d 379, 380-81 (E.D. Pa. 2009). The twelve instances of discrimination in *Nobel* comprised nine students who were disenrolled and three students who were denied enrollment, all on the basis of their disabilities. *Id.* at 381. While the court did not fully dismiss the pattern or practice claim, the court upheld the claim only as to the preschool level of the charter school network because eleven out of the twelve alleged instances involved preschool children, and only a single instance of discrimination at the elementary level was "insufficient to give rise to an alleged pattern or practice of discrimination throughout all of the defendant's elementary schools." *Id.* at 384. The court granted the motion to dismiss as to all other levels of the defendant's charter school operation. *Id.* (granting motion to dismiss as to "day care, elementary, [and] secondary level"). Further, despite the limited number of total instances of discrimination that were alleged, the eleven preschool instances implicated over a third of the defendant's total charter school operation, with six different schools across six different states alleged to have undertaken at least one discriminatory act at the preschool level. *Id.*

Here, as compared to *Nobel*, even fewer individual members of LA Fitness are alleged to have experienced discrimination, both as a raw number and as a proportion of the alleged size of the pattern or practice. Here, four individuals are alleged to have experienced discrimination, as compared to Defendant's nationwide operation including 700 locations. In *Nobel*, eleven individuals were alleged to have experienced discrimination, as compared to the defendant's fifteen schools in *Nobel*. Even the allegations regarding Patrons A-D and the Dallas-Ft. Worth area implicate a much smaller proportion of Defendant's total operation than in *Nobel*, where over a third of the total schools were implicated.[3] Nor

---

[3] Again, since the complaint fails to specify exactly how many members experienced discrimination and exactly how many

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

could this Court limit the claims here to any single portion of Defendant's operation as was done in *Nobel* when the complaint here fails to specify which of LA Fitness's locations in the Dallas-Ft. Worth area had violations or which locations were visited by Patrons A-D.

As the *Nobel* case indicates, Plaintiff's allegations, in order to support a pattern or practice claim as to Defendant's entire operation, need not show scores of similar violations in every single LA Fitness location—but if relying on statistical or anecdotal allegations alone, a significant enough portion of Defendant's entire nationwide operation must be implicated such that the Court can infer that the violations are no longer random or sporadic but systemic.

On this point, Plaintiff cites to other cases where courts sustained pattern or practice claims with similarly sparse allegations. However, these cases are inapplicable here because they alleged limited facts against individual persons or very small operations. *See, e.g.*, *United States v. Prashad*, 437 F. Supp. 3d 105, 108-109 (D. Mass. 2020) (finding pattern or practice claim adequately plead against two individual owners of local residential properties based on only six total instances of harassment by tenants or guests). Cases cited by Plaintiff that did pertain to larger operations had accompanying allegations far more robust than the allegations here. *See, e.g.*, *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, 904 F. Supp. 2d 1074, 1085 (D. Haw. 2012) (finding pattern or practice claim adequately plead based on detailed allegations of "ongoing and repeated" violations of Title VII against farm workers all recruited through the same recruitment agency to work on farms in Hawaii all recruited through the same recruitment agency)

Another way that sparse statistical or anecdotal allegations of instances of discrimination may suffice is if they are supported by allegations of a corporate-level policy. *See Washington v. Matheson Flight Extenders, Inc.*, 440 F. Supp. 3d 1201, 1215-16 (W.D. Wash. 2020) (finding issue of fact remained at summary judgment as to pattern or practice claim where plaintiff offered "statistically insignificant" anecdotal evidence alongside "direct evidence" of a discriminatory policy). However, no such allegations of a corporate policy are present here, as Plaintiff admits.

---

locations violated the ADA, the numbers are impossible to precisely quantify. However, this imprecision makes it impossible for the Court to infer that the alleged violations were more than simply random or sporadic as compared to the size of Defendant's total operation, which is specifically alleged to be "the largest chain of owner operated gym and fitness club facilities in the United States" and comprised of approximately 700 total locations. Compl. ¶¶ 1, 11.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

Therefore, Plaintiff's allegations fail to sufficiently allege a pattern or practice of discrimination under the ADA by Defendant.

    **B.    Plaintiff does not provide adequate notice of the claim that the Attorney General has determined raises an issue of general public importance.**

Plaintiff argues in the alternative that, even should its pattern or practice theory fail, the motion to dismiss should nonetheless be denied because the complaint alleges that LA Fitness's discrimination against disabled individuals raises an issue of "general public importance" in violation of 42 U.S.C. § 12188(b)(1)(B)(ii). *See* Opp. at 10. Plaintiff here cites to the ADA's provision authorizing the Attorney General to commence a civil action when the Attorney General "has reasonable cause to believe that…any person or group of persons has been discriminated against under [the ADA] and such discrimination raises an issue of general public importance." 42 U.S.C. § 12188(b)(1)(B). In sum, this means that, even when an individual discriminatory act or acts do not evince a pattern or practice of discrimination, the Government may still bring suit when the Attorney General determines that the individual act or acts raise an issue of general public importance.

Further, "[t]he Attorney General's determination that a matter raises an issue of general public importance has been consistently recognized as unreviewable by the courts." *United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1133 (D. Idaho 2003); *see also United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115 (5th Cir. 1973) ("Once the Attorney General alleged that he had reasonable cause to believe that a violation of…[the Fair Housing Act] denied rights to a group of persons and that this denial raised an issue of general public importance, he had standing to commence an action in District Court and to obtain injunctive relief upon a finding of a violation of the Act."). Here, Plaintiff has alleged that the Attorney General has determined these alleged violations are a matter of general public importance—certainly sufficient at the pleading stage to allege the Attorney General's authority to bring suit. Indeed, Defendant admits in its reply that the Attorney General's determination is unreviewable. *See* Reply in Support of Motion to Dismiss, ECF No. 24 ("Reply"), at 6.

However, while the Attorney General's determination of general public importance cannot be reviewed and authorizes the Attorney General to "commence a civil action in any appropriate United

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

States district court," 42 U.S.C. § 12188(b)(1)(B), the complaint still must plead facts that, taken as true, plausibly demonstrate that Defendant violated the ADA commensurate with what the Attorney General has found to be of general public importance, and provide proper notice to Defendant of that claim and the grounds upon which it rests.[4]

Here, the complaint fails to provide fair notice of the general public importance claim because the complete lack of any specific information as to the alleged individual violations fails to give Defendant proper notice of even the scope of the claims against it. The complaint gives Defendant notice of four members, unidentified by either name or LA Fitness location, who experienced at least one act of discrimination, and notice of a long list of *categories* of ADA violations affecting some unspecified number of Defendant's locations in the Dallas-Ft. Worth area. When Plaintiff seeks to sue and obtain relief as to not just any specific location or set of locations, but Defendant's entire nationwide operation, these allegations utterly fail to provide adequate notice of what exactly the claim against Defendant as a *nationwide company* is and the grounds upon which that claim rests.

In addition, the complaint is vague, because it appears to conflate the issue of general public importance with the allegations of a pattern or practice. *See* Compl. ¶¶ 43-44 ("Defendant violated [the ADA] by engaging in a pattern or practice of discrimination…Defendant's discriminatory acts raise an issue of general public importance"). Either Defendant's *pattern or practice* is of general public importance, or Defendant's *individual acts* are of public importance.

---

[4] The Court could find no case law interpreting pleading requirements for general public importance claims. The only case cited by the parties on the subject is somewhat unhelpful given that it 1) dealt with the issue at the summary judgment stage, and 2) found that an issue of fact remained as to a pattern or practice alongside finding an issue of fact remained as to individual discriminatory acts that raised an issue of general public importance. *See Taigen & Sons, Inc.*, 303 F. Supp. 2d at 1139. The reasoning in *Taigen* appears to accord with the Court's analysis here. In *Taigen*, either the to-be-proven acts of discrimination amounted to a pattern or practice of discrimination, or the to-be-proven acts of discrimination had already been determined to raise an issue of general public importance as individual acts. *See id.* ("[I]f the [defendants] have inadequately designed and constructed [a housing development] to serve persons with disabilities, the [defendants] have denied a group of persons rights granted by the Fair Housing Act and such a denial raises an issue of general public importance…even if the [defendants'] actions do not amount to a 'pattern or practice' of discrimination").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:24-cv-02172-SVW-KES | Date | June 6, 2025 |
|---|---|---|---|
| Title | *United States of America v. Fitness International, LLC d/b/a LA Fitness* | | |

If the former, Plaintiff has failed to adequately allege facts to support a pattern or practice, meaning that the Attorney General's determination is irrelevant. A determination that a pattern or practice of discrimination raises an issue of general public importance is of no event if such a pattern or practice does not exist in the first place. If the latter, the complaint fails to properly notice a claim based on the individual acts because the utter lack of any specific information in the complaint about those acts fails to provide proper notice of a claim based entirely on those acts.[5]

Therefore, Plaintiff's allegations fail to support a general public importance claim under the ADA because they do not provide adequate notice of the claims to Defendant.

### C. Plaintiff's claims are dismissed without prejudice.

Defendant further argues that the complaint must be dismissed with prejudice because of the complaint's "conclusory allegations of disconnected and sporadic incidents," Mot. at 1, and conflation of the allegations of general public importance with "unsupported claims of a pattern or practice of discrimination." Reply at 7. However, neither of these arguments demonstrate that "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Dismissal is without prejudice.

### V. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's complaint is dismissed without prejudice. Plaintiff has 14 days to remedy the deficiencies identified in this order and file an amended complaint.

**IT IS SO ORDERED.**

---

[5] This is especially true given that requested relief goes beyond simply remedying *those specific acts of discrimination* and would touch Defendant's entire nationwide operation. *See, e.g.*, Compl. ¶ 47 (seeking to "[e]njoin Defendant, its officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities"). If the Attorney General has determined that individual acts are of general public importance, it follows that Plaintiff could seek relief *for those acts*, not *against Defendant's entire nationwide operation*.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |